[Civ. No. 1659. Fourth Appellate District.—January 26, 1938.]

D. E. PAPENFUS, Appellant, v. WEBB PRODUCTS CO., INC. (a Corporation) et al., Respondents.

Carl B. Hilliard for Appellant.

Wilson & Coughlin for Respondents.

BARNARD, P. J.—This is an action for rescission in which the plaintiff sought to recover certain property delivered to the defendants in pursuance of a contract, or the value thereof in the event a redelivery could not be made.

In 1926 the individual defendants, as copartners, were engaged in the business of manufacturing cement and adhesive products in the city of San Bernardino. They formed a corporation for the purpose of taking over this business and early in 1927 a permit was issued permitting the corporation to sell and issue 1200 shares of stock to its incorporators for cash. Shortly thereafter the assets of the partnership were transferred to the corporation and in consideration thereof 200 shares were issued to Corkham, 450 shares to Webb and 25 shares to Webb's brother. Although this and the subsequent issue of stock in exchange for property was in violation of the permit it is conceded that the incorporators were unaware of this fact and that there was no intentional fraud or bad faith on their part.

The plaintiff was engaged in the business of manufacturing wood putties and like products under secret formulae in the city of Los Angeles, which were marketed under a certain trade name. Under an agreement dated June 27, 1931, these two businesses were combined, the plaintiff transferred his tangible assets together with his formulae and the good will of his business to the corporation, 100 shares of its stock was issued to him, he entered the employ of the corporation and became its production manager, and the combined business was conducted without trouble for more than four years. On October 1, 1935, the plaintiff discovered that his stock, as well as that of the other stockholders, was not issued in conformance with the permit and on November 4, 1935, he brought this action for a rescission on the theory that there had been a constructive fraud since the stock issued to him was void. Judgment was for the defendants and the plaintiff has appealed.

The questions presented by the appellant are whether the issuance of such void stock is such a constructive fraud as will entitle the aggrieved party to rescind and recover damages, whether the aggrieved party may by his conduct be

estopped from questioning the validity of such stock, and whether the judgment is supported by the evidence. A number of findings are specifically attacked which need not be considered, since they are immaterial in any event.

 It may be conceded that the issuance of stock under these conditions is a constructive fraud and that a contract exchanging property for such stock may, under proper circumstances, be rescinded. The real issues here are somewhat different and appellant's contentions are in fact based upon the theory that the contract, as a result of which the two businesses were combined, was divisible, that his exchange of certain assets for stock in this corporation had nothing to do with other portions of the contract, and that there was nothing for him to return or offer to return since he received nothing of value.

 It is at once apparent that the circumstances here are quite unlike those involved in the ordinary rescission action. While a constructive fraud may exist there was no actual fraud and the individual respondents are in a position similar to that occupied by the appellant, having also transferred the assets of their business to the corporation in exchange for void stock. The two businesses were in fact combined, the assets of both were intermingled, the new business was carried on for some years and the corporation apparently holds the title to both sets of properties in trust for the respective parties.

The contract under which this situation was brought about was entered into between the appellant as first party and the corporation respondent as second party. It recites that the first party has for some time conducted a certain business, that the second party has for some time conducted another business, and that the first party desires to transfer the assets of his business to the second party "upon the terms and conditions herein set forth". By the terms which follow it is agreed that in consideration of the issuance to the first party of 100 shares of stock of the second party the first party will transfer to the second party all assets of the business theretofore conducted by him, including all formulae and prescriptions for the making of products theretofore used by him; that in consideration of the premises the second party agrees upon receipt of said assets to issue to the first party 100 shares of its stock; that the first party will

pay all debts theretofore contracted by him and turn over all sums received by reason of sales made by him after the taking of an inventory on a certain date; that the first party from and after July 1, 1931, shall devote all of his time and service as an employee of the second party and shall receive a monthly salary of $200 with further adjustment in salary to be made by the board of directors as conditions may warrant; that the first party shall not be discharged without just cause or lawful reason; that the first party shall not engage in a similar business or divulge to others any of the formulae or prescriptions then developed or which might thereafter be developed; that both parties shall use their efforts to prevent the disclosure to others of any of the formulae or prescriptions thereby conveyed or then owned by the second party; and that the first party shall become a member of the board of directors of the second party.

The subsequent action of the parties throws some light on the meaning and intent of this contract. Immediately after its execution the appellant became production manager of the combined business, overseeing the mixing of the various formulae and looking after the manufacture of goods to be sold. He continued these activities, as well as the exercise of his rights as a director and stockholder of the corporation, not only during the period prior to his discovery of the fact that the issuance of the stock was not in accordance with the permit but thereafter and until more than a month after this action was filed. The suit was filed on November 4, 1935, and he continued as production manager until December 6, 1935. He participated as a stockholder in five meetings held in December, 1935, the last one being on December 30th. He participated as a stockholder at the stockholders' meeting held on January 14, 1936, taking an active part in the passing of motions. At the end of each year surplus earnings had been divided among the supposed stockholders. At the end of 1933 the appellant received from such surplus earnings $250, at the end of 1934 he received $825 and on February 19, 1936, he demanded his share of the surplus earnings for 1935.

We think it sufficiently appears that there were not two separate agreements between these parties, one providing for the exchange of certain assets for stock and another independent agreement providing for the employment of the

appellant. There was one agreement, the essential purpose of which was to combine these two businesses and carry them on as one business with the appellant taking an important part therein. All that was done by either of the parties to this action was done in consideration of what should be done by the other party under the terms of this agreement. The new business was then conducted for a considerable period, all of the parties contributing more than the assets, tangible or otherwise, which had been put in and all of them receiving direct benefits which arose from the contract in its entirety.

It is conceded that the assets transferred by the appellant in exchange for the stock could not be returned in kind because the tangible assets had been intermingled with similar properties and in part used up and destroyed, and because the secret formulae had in part lost their value by being used in the other business. The appellant argues, however, that he is entitled to a return of the value of the assets which he exchanged for the stock. The difficulties in the situation are illustrated by the fact that the appellant, although he pleaded and attempted to prove a rescission and stated to the trial court that the action was one for a rescission, has argued on this appeal that the action is one for damages and states that the measure of damages in such a case as this is that prescribed by section 3343 of the Civil Code, that is the difference between the value of that with which he parted and the value of that which he received. It may be observed that even on this theory there is no evidence as to the amount of damages suffered by the appellant. There is some testimony as to the value of the assets transferred by him to the corporation, but there is no evidence as to the value of what he received from the corporation aside from the stock certificate, which he says is worthless.

It is a general rule that a rescission will not be enforced where it would be inequitable to do so. This appears to be the case here, where all of the parties had proceeded for years in the honest belief that they held stock which they later discovered to be invalid. While the stock itself was worthless, each had some kind of an interest in the property held by the corporation which they had used in common. It would be a practical impossibility to restore either of the parties to the position previously occupied. The appellant failed

to restore or offer to restore all that he had received, including not only his interest in the combined business and his share of extra earnings during certain years, but the knowledge of formulas and trade secrets formerly used by the respondents and which he had learned through his position as production manager. He further attempted to rescind in part while continuing to use and enjoy part of the benefits he had received which, under familiar rules, may not be done. He served no notice of rescission and conceding, as argued, that his failure in this respect was excused because it would have served no useful purpose in this particular case it must be conceded that if he rescinded at all he did so at or before the time he filed suit. However, after that time he not only continued to act as production manager, drawing a salary therefor, but continued to accept and demand benefits under the contract, continued to act as a director and as a stockholder of the corporation, and continued to assert his right to participate in the earnings of the business even for a considerable period after he had filed suit. Regardless of what other remedies might have been open to him the appellant did not establish a right to relief in this particular action and the court correctly entered judgment against him.

The judgment is affirmed.

Marks, J., concurred.